IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SYLVESTER HENRY,

           Plaintiff,

    v.                          CASE NO. 09-3214-SAC

JOHNNIE GODDARD, et al.,

           Defendants.

### MEMORANDUM AND ORDER

This civil rights complaint, 42 U.S.C. § 1983, was filed by plaintiff while he was an inmate of the Winfield Correctional Facility, Winfield, Kansas (WCF). Having examined the materials filed, the court finds as follows[1]. Two people are named as defendants: Johnny Goddard, Warden, Ellsworth Correctional Facility (ECF); and Walker, Head Nurse, ECF Correct Care Solutions.

### MOTION TO PROCEED IN FORMA PAUPERIS

Plaintiff filed a motion for leave to proceed without prepayment of fees (Doc. 2)(IFP motion), while he was a prisoner. Since then, the court has received a Notice of Change of Address, which indicates he has been released from prison. 28 U.S.C. § 1915 requires that a prisoner seeking to bring a civil action without prepayment of fees submit an affidavit described in subsection

---

[1] Mr. Henry attempted to bring this action once before, but the case was dismissed without prejudice for lack of prosecution and due to his failure to keep the court apprised of his current address.

(a)(1), and a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing" of the action. Mr. Henry did not provide the requisite financial record with his motion. However, since he is no longer a prisoner, this document cannot be required at this time. The court finds, based on the information currently before it, that plaintiff is without funds to pay the filing fee, and his IFP motion should be granted pursuant to 28 U.S.C. § 1915(a)(1).

**SCREENING**

"28 U.S.C. § 1915(e)(2)(B) requires a district court to dismiss the complaint of a party proceeding IFP whenever the court determines that the claims are frivolous[2]," malicious or fail to state a claim. Id.; Fogle v. Pierson, 435 F.3d 1252 (10th Cir. 2006). Plaintiff seeks redress from a government employee for events that occurred while he was a prisoner. See 28 U.S.C. § 1915(A). Having screened all materials filed, the court finds the

---

[2] § 1915(e)(2) provides in pertinent part:

. . . [T]he court shall dismiss the case at any time if the court determines that –

    (A) the allegation of poverty is untrue; or

    (B) the action or appeal–

        (i) is frivolous or malicious;
        (ii) fails to state a claim on which relief may be granted; or
        (iii) seeks monetary relief against a defendant who is immune from such relief.

Id.

complaint is subject to being dismissed for reasons that follow.

**FACTUAL BACKGROUND AND CLAIMS**

In March, 2007, Mr. Henry was apparently taken into custody on a parole violator warrant[3]. He alleges the following as count I of his complaint. In March, 2007, he saw "Dr. Mike of the Sedgwick County Jail's Mental Health Department" who prescribed "keep on medications". On August 23, 2007, he was returned to ECF. He saw medical staff, and Mr. Bonilla "of Mental Health ECF" spoke to him briefly but did not properly evaluate him by contacting Dr. Mike. Plaintiff's Unit Team Counselor, Mr. Wilson, and Bonilla discussed plaintiff's prior "car accident and medical records" without permission. "Mr. "Bonilla's improper evaluation" caused "Classification Manager Sauers" to change plaintiff's custody from minimum to medium due to "mental health points." As a result plaintiff was denied work release. He alleges that defendant Warden Goddard promised in writing he would have time to be in work release under Bonilla's plan, but reneged on that promise. Plaintiff states he needed work release to make some money before being paroled.

Mr. Henry claims defendants deliberately denied him work release as punishment for his coming back to prison. He also claims he suffered stress, sleepless nights, mood swings,

---

[3] The Kansas Department of Corrections (KDOC) inmate location history available on-line indicates plaintiff was paroled in October 2006, and a parole violator warrant was issued in March 2007.

3

headaches, ringing in his ears, blurred vision, and constant fear of being homeless once paroled.  He asserts defendants violated his "First Amendment right to redress the courts without delay"; his Fifth Amendment rights to life, liberty, and due process as well as to "confidentiality under federal standards for privacy"; his Fourteenth Amendment right to due process and equal protection; and his right to enter and complete the work release program; as well as subjected him to cruel and unusual punishment.  He seeks compensatory and punitive damages for "annoyance", anxiety, mental anguish, and for missing out on work release.

As count II, plaintiff generally claims defendants Goddard and Nurse Walker were negligent in their duties to make sure he received proper medical treatment and to make sure his various rights were not violated.  In support, he alleges the following.  In "mid year of 2006" while he was confined at the Hutchinson Correctional Facility (HCF), "the clinic" ordered a pair of "T.E.D. hose" and one bottle of adhesive to repair old T.E.D. hose.  "Sometime that year" plaintiff was transferred to ECF "to finish serving his violation time."  Upon arriving at ECF, he requested "both the medical devices", but then-Warden Sam Cline and defendant Walker denied his request.  Plaintiff has attached Sam Cline's decision dated October 24, 2006 to his complaint which provided: "[D]ue to your impending release you should be responsible for the purchase of TED hose.  You will need to make do with the hose you have until your release later this week."  On August 24, 2007, he saw Dr. Kepka, who evaluated him and ordered one pair of T.E.D.

4

hose and one pair of "Orthopedic Tennis Shoes".  On September 13, 2007, the nurse gave him T.E.D. hose that were the wrong size, and the correct size was not provided until October 13, 2007. Plaintiff was also prescribed "orthopedic tennis shoes" by his doctors on the street and by KDOC doctor Jones.  He has medically required these shoes since 1988 due to multiple gunshot wounds and bloodclots in his left leg.  He was told that he must purchase the shoes from the canteen.  He had to wear "State issued boots" because he had no funds.  "[T]hey" refused to simply credit his account for the cost of his tennis shoes.

Plaintiff also alleges that in August, 2007, he was known as a chronic care patient, and required care for "18 or more" medical conditions.  He complains because Nurse Rush told him rules provided he could only be seen at the clinic "for one issue a day" and would be charged for each separate visit.  He claims this policy is not required by prison regulation, and feels it violated his federal constitutional rights.  He owed money to KDOC upon his return to prison, accumulated more debt due to medical charges and postage fees, and monthly deductions were taken from his account.

Plaintiff also mentions that in 1993 or 94, a nurse at Norton Correctional Facility told him he had the Hepatitis C virus when there was no available treatment, and "years later" he asked for a certain treatment at ECF, but was told by "the nurse" he did not fit the criteria.  He was treated at WCF for this condition. He exhibits a "property claim" he filed with KDOC in September, 2007, seeking money damages for denial of treatment.

5

Plaintiff claims he suffered "long-term headaches" from trying to convince ECF to provide the medical devices, stomach problems from worrying if his leg would clot without the devices, stress, blurred vision, backaches, sleeplessness, mood swings, worry that he would die "because of not being treated for the virus", and troubles from having to "continuously re-file for sick call" and being charged for each visit. He asserts defendants violated fundamental fairness, his First, Fifth, Eighth and Fourteenth Amendment rights, "KARs, KSAs, IMPPs, GOs and etc." He again asks the court to award him compensatory and punitive damages for annoyance, anxiety and mental anguish.

As count III plaintiff claims defendants Goddard and Walker "and et al" were negligent in providing adequate information and medical treatments, which require him "to seek further treatments after being released." In support, he alleges the following. On August 27, 2007, he contacted Correct Care Solutions (CCS) at ECF and requested a copy of "all of his medications" and their side effects, but his request was denied[4]. On about September 27, 2007, he saw Dr. Kepka due to a lump and pain in his chest. Dr. Kepka asked him if he was taking Zantac, which he was, and told him one of its possible side effects was a "calcium build-up". He was taken off Zantac, and informed that removal of the lump would require surgery. He was led to believe he would be called out to

---

[4] Plaintiff's attached grievance and response on this matter indicates clinic staff explain the possible side effects of medications at the time prescriptions are issued, and plaintiff could state his concerns about particular medications at the clinic.

6

talk to a surgeon. On October 15, 2007, he returned to the clinic, and was told surgery had not been not scheduled. Dr. Kepka said he would resubmit an order and it would have to be approved by "E.C.F.'s Care Management Staff" and then sent to Topeka for approval by "Care Management Topeka". Henry filed grievances that went to his Unit Team Counselor, the Clinic, Deputy Warden Fink, and the Secretary of Corrections (SOC), and received no answer from the SOC. He alleges the pain was "very intense" all the time. He exhibits the answer to a grievance dated October 29, 2007, which stated:

> [Y]our situation is still under review (by CCS) and if a decision is made to do the referral, you will be scheduled. If approval for referral to the surgeon is given, an appointment will be scheduled.

On or about January 30, 2008, a mammogram was performed. Thereafter, plaintiff was further evaluated by ultrasound. On or about February 28, 2008, he was notified that the ultrasound report had been received, and his condition would be reviewed in six months, which was after he was to be released from custody. He asked if surgery would be provided on parole, and was told it would not.

Plaintiff claims he has suffered due to "complications" and frustrations "defendants" caused when he sought medical help, and for pain and suffering that could have been avoided had the clinic not refused to give him a list of side effects upon his request. He seeks the same damages as before, plus damages for harassment by "them" due to his grievances and nominal damages for "breach of an

7

agreement or the invasion of a right."

Plaintiff also seeks "a restraining order" prohibiting his transfer to any other facility for nondisciplinary reasons, and requiring staff requests to plaintiff for any matters outside of normal facility activities to be received by "a neutral individual" outside the prison.

Henry states he has exhausted his administrative remedies.

**LEGAL STANDARDS**

"To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution or law of the United States." West v. Atkins, 487 U.S. 42, 48 (1988); Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992). A pro se complaint must be given a liberal construction. See Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997). An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. Trujillo v. Williams, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established); Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996); Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993)(affirming district court's dismissal where "plaintiff failed

8

to allege personal participation of the defendants"). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." Fogarty v. Gallegos, 523 F.3d 1147, 1527 (10th Cir. 2008); Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988).

"The Supreme Court has recognized a prisoner may be deprived of a liberty interest based on a severe change in the conditions of confinement." Chambers v. CO. Dept. of Corrections, 205 F.3d 1237, 1242 (10th Cir. 2000). However, "[t]hese interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 1242 (quoting Sandin v. Conner, 515 U.S. 472, 483 (1995)). Thus, with respect to an inmate's classification and prison programs, only that which imposes an "atypical, significant" hardship in relation to the ordinary incidents of prison life violates the due process clause. Sandin, 515 U.S. at 485.

An inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently

9

culpable state of mind." Miller v. Glanz, 948 F.2d 1562, 1569 (10th Cir. 1991); Martinez v. Garden, 430 F.3d 1302, 1304 (10th Cir. 2005). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980); Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999). "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." Martinez, 430 F.3d at 1304 (citing Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)(quotation omitted)). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 1305 (citing Riddle v. Mondragon, 83 F.3d 1197, 1204 (10th Cir. 1996)(quotation omitted)). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106 ; Wilson v. Seiter, 501 U.S. 294, 297 (1991). Likewise, a mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. See Estelle, 429 U.S. at 106-07; Handy v. Price, 996 F.2d 1064, 1067 (10th Cir. 1993)(affirming that a quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim);

Smart v. Villar, 547 F.2d 112, 114 (10th Cir. 1976)(Where the complaint alleges a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints."). As the United States Supreme Court has explained:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Estelle, 429 U.S. at 105-106 (footnote omitted). A claim of total denial of medical care differs from a claim of inadequate medical care. Coppinger v. Townsend, 398 F.2d 392, 394 (10th Cir. 1968). The prisoner's right is to medical care-not to the type or scope of medical care he personally desires. Coppinger, 398 F.2d at 394.

**REQUEST FOR RESTRAINING ORDER**

At the outset, the court denies plaintiff's request for a restraining order. Plaintiff does not allege facts showing any of the elements he must demonstrate in order to be entitled to extraordinary preliminary relief. Moreover, the relief he seeks in this request, an order barring his transfer to any other facility and preventing prison staff from directly communicating with him, is mooted by his release from prison.

**CLAIM REGARDING CLASSIFICATION AND WORK RELEASE**

Generally, a prison inmate has no liberty interest in and, therefore, no constitutional right to a certain custody classification while in prison or to participate in a work release program. See Sandin v. Conner, 515 U.S. 472, 484 (1995); Levoy v. Mills, 788 F.2d 1437, 1440 (10th Cir. 1986); Penrod v. Zavaras, 94 F.3d 1399, 1407 (10th Cir. 1996). Such matters are within the discretion of prison officials. Plaintiff does not refer to any Kansas authority, and the court is aware of none, that created a right or expectation in plaintiff to a certain security classification or to work release. It follows that plaintiff's allegations, intended to show he was improperly classified and wrongfully denied work release, taken as true, state no federal constitutional violation. Plaintiff's bald statement that he was denied work release as punishment is not supported by any facts. Accordingly, these claims are subject to being dismissed.

**CLAIM OF DENIAL OF PRESCRIBED HOSIERY AND SHOES**

Similarly, plaintiff's claim of a delay in receiving replacement hosiery, taken as true, fails to state a claim of denial of medical treatment under the Eighth and Fourteenth Amendments. Plaintiff does not allege facts showing substantial physical harm resulted from the delay[5].

Plaintiff alleges new orthopedic tennis shoes were not just

---

[5] In fact, the only specific harm alleged is that he had to go to sick call more often and make payments.

12

delayed, but refused altogether. However, he does not allege in his complaint that either defendant Goddard or defendant Walker actually denied his request for new shoes. His attached exhibits of administrative grievances, which may be considered a part of his complaint, indicate that a "Ms. Mehler" reviewed his information, determined that new shoes would not be provided, and he would have to purchase shoes or wear those provided by the State. Since neither person named as a defendant in this action is alleged to have personally participated in the denial of plaintiff's request for new shoes, this claim is subject to being dismissed.

**CLAIM OF FAILURE TO PROVIDE SURGERY**

Plaintiff's claim that defendants failed to provide surgery for a painful lump in his chest suffers from the same deficiency. He does not allege that either defendant personally made the decision to review his condition in six months, rather than schedule him for surgery. Moreover, Mr. Henry's allegations and exhibits indicate that he received medical attention for his legs as well as for the calcium lump in his chest. His mere difference of opinion with the professional treatment decisions of prison medical staff, without more, does not present a claim of unconstitutional denial of medical care. While this claim appears to involve a serious medical need, it is still subject to being dismissed due to these deficiencies and because plaintiff does not allege facts indicating the treatment provided was other than negligence or malpractice.

**CLAIM REGARDING FEES FOR SICK CALL AND MEDICAL RECORDS**

Plaintiff complains of being charged for sick call visits, but does not allege facts indicating this process violated his federal constitutional rights. He does not allege that he was ever denied medical care due to his inability to pay. Instead, it appears he was generally credited with sick call charges, and was only required to make payments toward the amounts credited to his inmate account.

Plaintiff's complaint that his complete medical file and a list of all his medications and their possible side effects were not provided upon his request fails to state a federal constitutional violation. As to the former, plaintiff does not allege facts showing how "a nurse('s)" failure to produce his entire KDOC medical file upon his intake at ECF violated any federal constitutional rights. With respect to the latter claim, plaintiff exhibits a copy of an administrative grievance response, which reasonably provided that possible side effects are explained at the time prescriptions are issued, and plaintiff could ask about certain medications and their side effects at sick call. Plaintiff's allegation that he would not have taken Zantac had his request for a list of side effects not been denied, fails to explain why he did not refuse this medication at the time it was prescribed and its side effects were explained.

**CLAIM FOR FAILURE TO TREAT HEPATITIS**

Plaintiff exhibits an administrative claim he filed seeking money damages based upon the alleged failure to treat him for Hepatitis. In the claim, as in this complaint, he provided no name of the person or persons who denied his request for treatment, or other necessary facts such as the dates on which treatment was denied. He does not allege that either defendant named in this case was "the nurse" who advised he did not fit the criteria for treatment at ECF.

Moreover, it appears this alleged violation occurred prior to Mr. Henry's release on parole in October 2006. There is a two-year statute of limitations applicable to § 1983 claims for money damages. Plaintiff is required to provide the date(s) on which he was denied treatment for Hepatitis, because from the face of his complaint it appears this particular claim is time-barred.

**CONCLUSORY CLAIMS AND REQUESTS FOR RELIEF**

Following each of his groups of allegations referred to as counts herein, plaintiff includes a completely conclusory litany of asserted violations of his federal constitutional rights. These include his "First Amendment right to redress the courts without delay"; his Fifth Amendment rights to life, liberty, and due process as well as to "confidentiality under federal standards for privacy"; and his Fourteenth Amendment right to due process and equal protection. However, he does not explain how the facts he alleges violate any of these constitutional provisions. Plaintiff's referrals to KSAs, KARs, and IMPPs fail to state a

claim because these are state laws and regulations, and a violation of state law does not present a claim under § 1983.

Furthermore, plaintiff's repeated requests for damages for "annoyance", anxiety, and mental anguish amount to claims based upon mental or emotional injury. 42 U.S.C. § 1997e(e) provides:

> "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

42 U.S.C. § 1997e(e). The assertion that alleged violations resulted in emotional trauma which manifested itself in symptoms such as stress, headaches, sleeplessness, mood swings, fear, and worry does not satisfy the statutory prerequisite that plaintiff make a showing of a prior physical injury from the defendants' conduct. Thus, to the extent plaintiff alleges emotional and mental injuries only (and seeks associated damages), his claims are subject to being dismissed[6]. See e.g., Zehner v. Trigg, 952 F.Supp. 1318, 1322 (S.D. Ind.)(physical injury requirement of § 1997e(e) is not broad enough to encompass inhalation or ingestion of asbestos without proof of resulting disease of other adverse physical effects), aff'd, 133 F.3d 459 (7th Cir. 1997).

Finally, the court notes that plaintiff makes no specific request for injunctive relief. In any event, such claims are mooted by an inmate's release from prison.

---

[6] However, the statute only bars claims for mental or emotional injuries absent a physical injury. See 42 U.S.C. § 1997e(e); Robinson v. Page, 170 F.3d 747, 748 (7th Cir. 1999)("Section 1997e(e), as its wording makes clear, is applicable only to claims for mental and emotional injury. It has no application to a claim involving another type of injury.").

16

**ORDER TO SHOW CAUSE TO PLAINTIFF**

Plaintiff is hereby ordered to show cause why this action should not be dismissed for the reasons stated in the foregoing Memorandum and Order. If he fails to cure the deficiencies in his complaint in the time allotted, this action may be dismissed without further notice.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Leave to Proceed in forma pauperis (Doc. 2) is granted, and his request for a restraining order in his complaint (Doc. 1) is denied.

**IT IS FURTHER ORDERED** that plaintiff is granted thirty (30) days in which to show cause why this action should not be dismissed for the reasons stated in this Memorandum and Order, or this action will be dismissed for failure to state sufficient facts to support a federal constitutional claim.

**IT IS SO ORDERED**.

Dated this 3rd day of November, 2009, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge